UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES EVANS COURTEAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13173** |
| **JERRY LARPENTER, ET AL.** | **SECTION: "R"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Charles Evans Courteaux, a state inmate, filed the instant *pro se* complaint pursuant to 42 U.S.C. 1983.[1]  He named the following defendants: Jerry Larpenter; the Terrebonne Parish Jail; Richard Neal; Lt. Schausch; and the Terrebonne Parish Consolidated Government. Plaintiff stated his claims as follows:

> I am a pre-trial detainee and convicted offender.  I am being subjected to hazardous conditions at the Terrebonne Parish Jail, which may be very hazardous to my health, which has been bothering me since I have been in custody at this facility.  The living area, eating area, sleeping quarters, and shower and bathroom area, contains mold, mildew, dead flies, bugs, ants, and mosquitos.  The ventilation systems contain mold and other harmful Bacteria, and pathogens.  I notified the staff about the issue.  I asked them to fix the issue and test me for exposure to the harmful agents/spores.  Which may lead to health issues or death.  The defendants

---

[1] In pertinent part, that statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

blatantly neglected their duty and responsibilities to not only me, but also to their own policies and procedure as to the general cleanliness, safeguarding and hygienic details of the facility and they failed in their capacity to maintain a clean and humane environment as required by law and written policy.

Further more the food trays are being served with old food and mold on the trays which clearly means they are not being properly washed and sanitized. Our shower and bathroom area has bad mold or other harmful agents that keep causing me health problems like coughing, burning and itching eyes, sinus congestions, sneezing, chest pains, head aches, slight fever off and on, and rashes that itch and well up like hives. I informed medical of my issue and medical put me on antibiotics for a week to 10 days. It barely helped me and when I was done with the medicine it started my issue agin and worst than before. I never had any of these symptoms until I was transported to Terrebonne Parish Jail from Bazaria County Jail in Angleton Texas. My medical reports can prove my health conditions from Texas to Terrebonne Parish Jail. Also once other inmates and I notified the Jail staff of the harmful mold issue. Deputies on the floor crew came in the dorm on October 2nd 2019 in between 9 a.m. to 12 a.m. and tried to conseal the fact that the mold was present in the air vents. And did "not" apply the proper procedures in contacting the right certified people to come in with the proper equitment to check, clean, and dispose of in the right manner. Instead, the floor crew trustee's came inside the dorm with brushes and began to disturb the harmful agents which only made things worst by dispersing the mold/agents throughout the dorm. Which made my symptoms worst. The Jail staff left us in the dorm as they attempted to brush away the mold. I asked the deputy about the mold. He told me that it wasn't mold. The Trustee that was on the latter (Derek Duplantis) is his name, stated that it was mold he was brushing off the vents. I told the deputy that if it was not black mold, then why did the warden and captain offered Joshsua Chaisson (another inmate) $13,000 to settle out his suit. The deputy told me that it was hush money so the situation would not be made public and so that the Jail would remain open and not have to pay way more money to fix the problem properly. Deputy Dardar is the one who said this and his work partener was with him Deputy Dion. Other inmates heard this as well "Inmates Alan Lancaster, Joshua Johnson, Carl Plaisance, Thomas Smith, Jimmy Robichaux, Percy Sylvester, Anthony Jones."

When they (the trustee's and deputy) was done brushing the mold to conseal the fact that it was there, our food was served through a hatch hole right underneath the same vent that the mold was on, 15 to 20 minutes after. Now may I remind you that this hatch hole does "NOT" get wiped down or disinfected daily with any cleaning supply. The Black mold is also on the ceiling tiles in our hallway which also has access to our vent inside our dorm. Therefor we are constantly exposed to the Bacteria which is causing irriation and health issues. Also we are being housed with inmates who has staph infections, hepatitis C, and HIV which may be spread to other inmates, when we should be segregated. I am not only concern of

my own health, but also the health of other inmates and the staff who work at the jail. Thank you for your time and assistance in this matter. God Bless us All.[2]

Plaintiff also explained his reasons for naming each defendant as follows:

Jerry Larpenter, he has responsibility to make sure everyone is doing their Jobs correctly. Terrebonne Parish Jail because it is the place in question where I am housed at. Richard Neal because he is head of the medical staff and should have seen to it I gotten the right test and treatment when first notified about it. Lt. Schaush [sic] because he was the one to respond to my grievances improperly and tried to conseal and brush off the issue, instead of looking into my claim properly. Terrebonne Parish Consolidated Government because they are the ones who are in charge of maintaining the Jail and making sure it is to stay clean and in proper conditions according to law and health codes, by federal laws.[3]

The Court ordered the Medical Administrator of the Terrebonne Parish Criminal Justice Complex to produce certified copies of plaintiff's medical records. Those records have been filed into this federal record.[4]

## I. Screening Standards

Plaintiff filed this federal civil action *in forma pauperis*.[5] Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)   is frivolous or malicious;
> (ii)  fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[2] Rec. Doc. 1, pp. 6-9.
[3] Id. at p. 5.
[4] Rec. Doc. 6. Plaintiff was provided with a copy of those records for his use in this proceeding.
[5] Rec. Docs. 2 and 4.

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A.   That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."   28 U.S.C. § 1915A(a).   Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Pursuant to this screening authority, the undersigned United States Magistrate Judge, after broadly construing plaintiff's complaint,[6] hereby makes the following recommendations with respect to the claims asserted therein.

## II. Plaintiff's Claims

### A. The Terrebonne Parish Jail

Although plaintiff has named the Terrebonne Parish Jail as a defendant in this action, that is clearly improper. "[A] jail is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983." Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); accord Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *5 (E.D. La. Nov. 13, 2013); Authement v. Terrebonne Parish Sheriff's Office, Civ. Action No. 09-5837, 2009 WL 4782368, at *4 (E.D. La. Dec. 3, 2009); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *3 (E.D. La. Oct. 23, 2009).

Accordingly, the claim against the Terrebonne Parish Jail should be dismissed as frivolous and/or for failure to state a claim on which relief may be granted. See, e.g., Ross v. Waitz, Civ. Action No. 18-8731, 2019 WL 361398, at *3 (E.D. La. Jan. 8, 2019), adopted, 2019 WL 351496 (E.D. La. Jan. 29, 2019).

### B. Lt. Schausch

Plaintiff's claim against Lt. Schausch is that he did not respond appropriately to plaintiff's grievances. However, that claim fails because an inappropriate response to a grievance is not a

---

[6] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

sufficient basis for liability under § 1983. Simply put: inmates have no constitutional right to an

adequate and effective grievance procedure or to have their complaints investigated and resolved

to their satisfaction. Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays,

169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

Accordingly, the claim against the Lt. Schausch should be dismissed as frivolous and/or

for failure to state a claim on which relief may be granted. See, e.g., Luke v. Beagron, Civ. Action

No. 16-13461, 2016 WL 8740486, at *9 (E.D. La. Dec. 28, 2016), adopted, 2017 WL 1407719

(E.D. La. Apr. 20, 2017).

### C. Richard Neal

As noted, plaintiff states that he sued Richard Neal "because he is head of the medical staff

and should have seen to it I gotten the right test and treatment when first notified about it."[7]

As an initial matter, it is unclear from the foregoing statement whether Neal was personally

involved in plaintiff's medical care or is being sued simply because he held a supervisory position

in the jail's medical department. If it is the latter, then the claim necessarily fails because a

supervisor cannot be held liable merely based on his supervisory capacity alone. Rather,

"[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v.

Steele, 709 F.2d 381, 382 (5th Cir. 1983). Because there is no vicarious liability for supervisors

for the conduct of their subordinates, a claim against a supervisor such as Neal fails absent well-

pled allegations of his personal involvement or some other form of causation to connect him to the

purported violation. Marks v. Hudson, 933 F.3d 481, 490 (5th Cir. 2019); accord Ashcroft v. Iqbal,

556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their

---

[7] Rec. Doc. 1, p. 5.

servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, Texas, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

Further, even if the Court assumes that plaintiff is instead contending that Neal was in fact personally involved in plaintiff's medical care, his claim still fails for the following reasons.

An inmate's federal constitutional right to medical care is a strictly limited one. Specifically, that right is violated only if the prisoner's "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Here, plaintiff complains of experiencing rather mild, routine symptoms: coughing and sneezing; sinus congestion; burning and itching eyes; headaches; chest pains; intermittent "slight fever"; and rashes.[8] Without more, minor symptoms such as those are not normally considered "serious medical needs" for the purposes of a federal civil rights action. See, e.g., Scott v. Batson, No. 88-1612, 1989 WL 37292, at *1 (9th Cir. Apr. 10, 1989) ("[N]either a

---

[8] Id. at p. 7.

7

'head cold' nor a 'sore throat' …is a 'serious medical need' ….");  Langley v. Leblanc, Civ. Action

No. 15-4396, 2016 WL 626707, at *4 (E.D. La. Feb. 3, 2016) ("A rash is not normally considered

a 'serious medical need' for the purposes of constitutional law."), adopted, 2016 WL 615524 (E.D.

La. Feb. 16, 2016); Jackson v. Gusman, Civ. Action No. 15-244, 2015 WL 5823295, at *7 (E.D.

La. Oct. 6, 2015) ("[Inmate]'s headaches, chest pains and stuffy nose do not rise to the level of

serious medical needs for constitutional purposes."); Payton v. Gusman, Civ. Action No. 12-2578,

2013 WL 5530280, at *11 (E.D. La. Oct. 7, 2013) (finding that "minor sinus irritation" was not a

serious medical need); Jackson v. Walton, No. 2:01-CV-0417, 2003 WL 22846399, at *2 (N.D.

Tex. Nov. 20, 2003) ("Nothing about plaintiff's initial complaint of fever and a sore throat would

indicate a medical emergency or even a serious medical need …."), adopted, 2004 WL 1778943

(N.D. Tex. Aug. 6, 2004); Davidson v. Scully, 155 F. Supp. 2d 77, 88 (S.D.N.Y. 2001) (finding

that an "eye infection, discomfort, … [and] irritation" were not serious medical needs); Schwartz

v. Jones, No. 99-3269, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (finding that a "head

cold" was not a serious medical need).

Moreover, *even if* those ailments could be considered "serious medical needs," plaintiff's

claim would nevertheless still fail because those needs were not met with "deliberate indifference."

The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is
> indisputable that an incorrect diagnosis by prison medical personnel does not
> suffice to state a claim for deliberate indifference. Rather, the plaintiff must show
> that the officials refused to treat him, ignored his complaints, intentionally treated
> him incorrectly, or engaged in any similar conduct that would clearly evince a
> wanton disregard for any serious medical needs. Furthermore, the decision whether
> to provide additional treatment is a classic example of a matter for medical
> judgment. And, the failure to alleviate a significant risk that the official should
> have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted).  In other words, "[d]eliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); accord Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).  Therefore, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

Here, the record reflects that plaintiff promptly received medical care for his various ailments.  For example, he concedes in his complaint that he was treated with antibiotics.[9]  Further, his medical records show that he received extensive medical care both inside and outside of the jail for a variety of medical complaints during his current period of incarceration.  Specifically, those records show that he received the following medical care with respect to the symptoms he identifies in the instant lawsuit:

| 11/26/2018 | Plaintiff was examined by medical staff. He complained of chest pains but denied that the pain was radiating.  The exam revealed that his left arm was warm and dry to the touch.  His blood pressure and pulse were checked.  He requested and was given Pepto-Bismol.  He was allowed to return to the dorm but was instructed "to notify medical if condition continues or worsens." (TPCJC00024)[10] |
|---|---|
| 12/16/2018 | Plaintiff was examined by medical staff. He complained of a dry, itchy throat.  The exam revealed redness, swelling of the throat, and nasal congestion.  He was prescribed Azithromycin (an antibiotic).  (TPCJC00022 and TPCJC00023) |
| 7/20/2019 | Plaintiff submitted a sick-call request complaining of throat pain, a cold, runny nose, cough, headache, and chest congestion.  He was seen that same day by the medical staff, and the exam revealed that his throat was red and swollen and that chest |

_____

[9] Id.
[10] The citations are to the Bates-stamped certified jail medical records which can be found at Rec. Doc. 6.

| | |
|---|---|
| | congestion was present. His blood pressure was within normal limits. He was prescribed Keflex (an antibiotic), ibuprofen (a nonsteroidal anti-inflammatory drug used to treat fever and pain), and Chlorpheniramine (an antihistamine). (TPCJC00014 and TPCJC00016) |
| 9/20/2019 | Plaintiff submitted a sick-call request complaining that he felt "really sick." He was seen that same day by the medical staff, and the exam revealed redness to the left side of his throat and some congestion. He was prescribed Amoxil (an antibiotic) and Chlorpheniramine. (TPCJC00007 and TPCJC00008) |
| 9/30/2019 | Plaintiff submitted a sick-call request asking that he be "checked for black mold related symptoms." He was referred for evaluation. (TPCJC000006) |
| 10/2/2019 | Plaintiff submitted a sick-call request complaining of burning and itching eyes, continuing sinus problems, intermittent chest pain, coughing and sneezing, and scratchy throat. He requested that he be tested for airborne spores. He was seen that same day by the medical staff, who noted that he was not coughing, did not sound congested, and had no redness in his eyes. He was nevertheless referred to the jail doctor for evaluation. (TPCJC000005) |
| 10/8/2019 | Plaintiff was examined by the medical staff. He complained of chest pain, cough, congestion, and rhinorrhea (i.e. a runny nose) ongoing for the past two months even after completing treatment with an antibiotic without improvement. The exam revealed "boggy sinus" with "PND" and erythema (a superficial reddening of the skin). He was diagnosed with sinusitis and prescribed Claritin (an antihistamine) and Flonase (an inhaled steroid). (TPCJC000002 and TPCJC000004) |

The foregoing medical records therefore establish that the jail medical staff promptly responded to plaintiff's medical requests and complaints, providing him with a variety of medications to treat his ailments. Such medical records showing continued treatment suffice to rebut an allegation of "deliberate indifference." See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

The foregoing conclusion is not changed by the fact that plaintiff's symptoms may have persisted despite the treatments provided. Federal constitutional protections are not violated merely because an inmate's medical care was unsuccessful or because pain persisted despite that care. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Further, the conclusion remains accurate even if plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical care was subpar in some respect or whether his medical problems persisted despite treatment;

rather, it is only whether he had serious medical needs that were met with deliberate indifference. He did not. Accordingly, his medical claim against Richard Neal should be dismissed as frivolous.

### D. The Terrebonne Parish Consolidated Government

Plaintiff has sued the Terrebonne Parish Consolidated Government, blaming that entity for the purportedly unsanitary conditions present at the jail. However, the parish government is not the proper defendant for that claim. Although a parish has the financial responsibility to provide a parish jail, that jail is then actually operated by the parish sheriff, not the parish government. As United States District Judge Lance Africk has explained:

> Louisiana law obligates the parish governing authority to provide "a good and sufficient jail." La. R.S. § 33:4715. [The Parish] also bears the responsibility of financing and physically maintaining the parish jail. See La. R.S. § 15:702. Significantly, however, it is the sheriff who has the duty of operating the jail facility. See La. Rev. Stat. § 15:704. [The Parish] does not "have authority over the operations of the jail or the management of the sheriff's employees working therein." Salvagio v. Doe, No. 13-5182, 2013 WL 6623921, at *3 (E.D. La. Dec. 16, 2013) (Vance, J.); see also Fairley v. Stalder, 294 Fed.Appx. 805, 812 (5th Cir. 2008) ("[W]e agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority.").
> 
> Because the parish lacks authority over the operations of the jail and the conduct of jail personnel, the sheriff – not the parish – is typically held responsible when those operations or that conduct fall below the standards imposed by federal law. See, e.g., Jones v. St. Tammany Par. Jail, 4 F.Supp.2d 606, 613 (E.D. La. 1998).

Arce v. Louisiana, 226 F. Supp. 3d 643, 649 (E.D. La. 2016); see also Jones v. St. Tammany Parish Jail, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) ("The Parish has no authority to manage the Sheriff's employees. The Parish exercises no power or discretion in the functioning of the Sheriff's office or the jail. The Parish's responsibility to the jail is limited to the funding of the jail. The Parish's fiscal responsibility for the jail does not constitute authority to control how the Sheriff fulfills his duties. Under this scheme, the Sheriff's policy-making decisions as well as his day-to-day

decisions regarding the management of the jail, cannot be imputed to the Parish." (citations omitted)). Moreover, with respect to the parish's obligation to "maintain" the jail, that obligation is one merely to fund, not actually provide, any needed maintenance. Actual provision of the maintenance is the parish sheriff's responsibility. See, e.g., Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *4 (E.D. La. May 11, 2010); Griffin v. Foti, 523 So. 2d 935, 938-39 (La. App. 4th Cir.), writ denied, 531 So. 2d 272 (La. 1988).

That said, it is nevertheless true that, while the parish government does not operate the jail, it still is not completely off the hook if the jail's conditions are in fact unconstitutional. For example, as Judge Africk further explained:

> [T]he allocation of management authority to the sheriff does not entirely absolve the parish of responsibility for an inmate's conditions of confinement. After all, the parish does have the responsibility of financing and physically maintaining the jail. It follows that, at the very least, the parish may be held liable when the physical jail facility itself does not comply with federal standards. It is also conceivable that to the extent the jail's deficiencies are attributable solely to a lack of adequate funding, the parish's obligation to fund the jail could be implicated and the parish might be held responsible.
>
> Courts considering allegations of jail deficiencies brought against a parish have typically asked first whether the allegations implicate the parish's responsibility to finance and physically maintain the jail. If those responsibilities are not implicated, the claim against the parish cannot go forward. See Salvagio, 2013 WL 6623921, at *3 ("Because plaintiff's allegations focus on the legality of his detention and do not pertain to the adequacy of the parish's funding of the jail facilities, the parish cannot be held liable for any misconduct on the part of the sheriff's employees with respect to plaintiff's detention."). If those responsibilities are implicated, then the parish is a proper defendant to the lawsuit. See Thompson v. Ackal, No. 15-02288, 2016 WL 1371192, at *5 (W.D. La. Feb. 2, 2016), report and recommendation adopted, No. CV 15-02288, 2016 WL 1370597 (W.D. La. Apr. 5, 2016); Roper v. Marino, No. 92-3988, 1995 WL 222185, at *1 (E.D. La. Apr. 13, 1995) (Vance, J.) (denying St. Charles Parish summary judgment where the plaintiff alleged "that the physical facility of the jail was inadequate" because issues of fact existed "concerning the adequacy of the physical facility" and whether parish funding was sufficient).

Arce, 226 F. Supp. 3d at 649-50.

Here, however, plaintiff does not allege that the purported conditions at the jail are the result of inadequate funding by the parish government.   Therefore, Terrebonne Parish Sheriff Larpenter, not the Terrebonne Parish Consolidated Government, is the proper defendant with respect to plaintiff's claim challenging those conditions.   See, e.g., Ates v. Terrebonne Parish, Civ. Action No. 13-5732, 2013 WL 6858455, at *3 (E.D. La. Dec. 30, 2018) ("[T]he proper defendant for Monell claims concerning the conditions of confinement at [a parish jail] is the … Parish Sheriff in his official capacity, *not* the parish government.").

Accordingly, the claim against the Terrebonne Parish Consolidated Government should be dismissed as frivolous and/or for failure to state a claim on which relief may be granted.

### E.  Jerry Larpenter

Lastly, plaintiff has sued Terrebonne Parish Sheriff Jerry Larpenter.   Although Sheriff Larpenter would be a proper defendant with respect to plaintiff's claims challenging the conditions of his confinement, those claims nevertheless must be dismissed because they ultimately have no merit for the following reasons.

As noted, plaintiff's primary complaint is that the jail is unsanitary.   Clearly, there is a point beyond which a jail's conditions are so unsanitary as to render them unconstitutional.   See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (holding that confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).   However, while a jail should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th

Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").

Therefore, constitutional standards are not violated simply because mold and mildew are present at the Terrebonne Parish Jail. See, e.g., Heaton v. Normand, Civ. Action No. 17-405, 2017 WL 3268341, at *4 (E.D. La. June 22, 2017) ("[T]he jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional."), adopted, 2017 WL 3252813 (E.D. La. July 31, 2017); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015) ("[T]he mere fact that fungus, mold, mildew, and rust are present [in a jail] does not warrant relief."); Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (holding that allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (finding that plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were nothing more than "a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

15

Constitutional standards also are not violated merely because flies, bugs, ants, and mosquitos are present. <u>See, e.g.</u>, <u>Heaton v. Normand</u>, Civ. Action No. 17-405, 2017 WL 3268341, at *5 (E.D. La. June 22, 2017) ("[T]he mere presence of insects and other types of vermin does not amount to a constitutional violation."), <u>adopted</u>, 2017 WL 3252813 (E.D. La. July 31, 2017); <u>Clark v. Gusman</u>, Civ. Action No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012) ("[T]he fact that pests are present does not amount to a constitutional violation."), <u>adopted</u>, 2012 WL 1825302 (E.D. La. May 18, 2012).

Constitutional standards likewise are not violated simply because food service practices fall short of optimal standards. <u>See, e.g.</u>, <u>Marshall v. Pohlman</u>, Civ. Action No. 16-15907, 2017 WL 2691166, at *2-3 (E.D. La. June 22, 2017) (denying as frivolous inmate's claim that "food [was] being served on dirty and stained plastic plates").

The Court is, of course, mindful that plaintiff attempts to nevertheless nudge his claim across the unconstitutional line by alleging that not only were the conditions unsanitary in the abstract, but that they also in fact resulted in actual harm to him in the form of the previously discussed ailments. However, even if the Court assumes for the purposes of this decision that those ailments resulted in whole or in part from the conditions, that is not determinative.

Rather, in order for inmate to prevail on such a claim challenging the conditions of his confinement, he must establish: "first, that the deprivation alleged was sufficiently serious (i.e., an official's act or omission must have resulted in the denial of 'the minimal civilized measure of life's necessities'); and second, that the prison official possessed a sufficiently culpable state of mind." <u>Herman v. Holiday</u>, 238 F.3d 660, 664 (5th Cir. 2001). Regarding that second prong, the United States Fifth Circuit Court of Appeals has explained:

16

> As for deliberate indifference, the Supreme Court defined it as when the official knows of and disregards an excessive risk to inmate health or safety. In other words, it's a subjective test. Elaborating, the Supreme Court explained [that] the official must both be aware of facts from which the inference could be drawn that a substantial risk of *serious harm* exists, and he must also draw the inference.

Jason v. Tanner, 938 F.3d 191, 195 (5th Cir. 2019) (emphasis added; footnote, quotation marks, and textual alteration omitted), cert. denied, 2020 WL 1124486 (U.S. Mar. 9, 2020). However, while the test of whether a prison official consciously disregarded a risk applies is a subjective one, the issue of "[w]hether a risk is substantial and the threatened harm is serious represents an *objective* test …." Hinojosa v. Livingston, 807 F.3d 657, 665 (5th Cir. 2015) (emphasis added).

In the instant case, the Court cannot say that the harm posed by the conditions at the Terrebonne Parish Jail was, objectively, sufficiently serious to trigger constitutional protections. On the contrary, as evidenced by the many citations *supra*, the jurisprudence is replete with cases holding that conditions such as those at issue here are not so egregious as to violate constitutional minimum standards. Moreover, as already explained, plaintiff himself in fact sustained no serious harm. As noted, the ailments he suffered, i.e. coughing and sneezing, sinus congestion, burning and itching eyes, headaches, chest pains, intermittent "slight fever," and rashes, while perhaps unpleasant, are ones that are considered fairly routine and minor. Further, jail staff actively worked to mitigate the risks posed by the jail conditions. As plaintiff concedes, trustees were sent to clean the areas after the inmates complained, and plaintiff was provided with medical care to treat his resulting ailments.

Lastly, the Court notes that plaintiff also challenges another condition of his confinement as posing a risk to his health, namely that the jail does not segregate inmates with "staph infections,

hepatitis C, and HIV" from uninfected inmates.[11]   It is true that an inmate's rights are violated if he is placed at substantial risk of contracting a serious disease as a result of a jail official's deliberate indifference.  See, e.g., Jacob v. Clarke, 129 F. App'x 326, 330 (8th Cir. 2005); see also Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989).   However, with respect to such claims, courts have generally held that a risk is considered to be substantial only if the disease in question is highly communicable,  such as diseases easily spread by airborne particles, see, e.g., Legate v. Livingston,  No. 2:14-CV-269, 2015 WL 158868, at *6 (S.D. Tex. Jan. 12, 2015), aff'd, 822 F.3d 207 (5th Cir. 2016), and the diseases plaintiff identifies are not ones which are normally spread in that manner.   As a result, although segregation of the infected inmates would perhaps be permissible,  and in some circumstances even advisable, the Court cannot say that it is constitutionally *required*.  See, e.g., Pierron v. L.P.D.C., Civ. Action No. 16-01746, 2017 WL 4990551, at *4 (E.D. La. Feb. 9, 2017) ("[T]he Defendants were under no constitutional duty to segregate those inmates with AIDS from inmates who were not so infected."), adopted, 2017 WL 4919125 (E.D. La. Oct. 31, 2017); Lasko v. Watts, Civ. Action No. 3:CV-06-2126, 2008 WL 11414556, at *12 n.16 (M.D. Pa. Aug. 12, 2008) ("[I]t is well established that prison officials do not violate the Eighth Amendment when they fail to segregate inmates who have HIV, AIDS or Hepatitis C from the general prison population."), aff'd, 373 F. App'x 196 (3d Cir. 2010); Oladipupo v. Austin, 104 F. Supp. 2d 626, 635 (W.D. La. 2000) ("The defendants were under no affirmative duty under the constitution to segregate those detainees with HIV from the non-infected detainees.").

---

[11] Rec. Doc. 1, p. 9.

For all of these reasons, the claim against Sheriff Jerry Larpenter should be dismissed as frivolous and/or for failure to state a claim on which relief may be granted.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-seventh day of April, 2020.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**